Argued December 5, 1940; affirmed February 4, 1941

WINTERS ET AL. *v.* WINTERS ET AL.
(109 P. (2d) 857)

*Lyndon L. Myers*, of Portland (McCamant, Thompson, King & Wood, of Portland, on the brief), for appellants.

*Nicholas Jaureguy*, of Portland (Cake, Jaureguy & Tooze and Beach, Simon & Greene, all of Portland, on the brief), for respondent.

KELLY, C. J. This is a suit to impress a trust upon two blocks of bonds held by the late Herman Winters. One block of bonds involved was executed and issued by Vancouver Commercial Hotel Company of Vancouver, Washington, and the other bonds are certain six per cent gold bonds which were issued by J. R. Ellison and C. H. White secured by a first mortgage on the Studio Building in Portland, Oregon, and commonly referred to as Studio Building bonds.

The Vancouver Commercial Hotel bonds in suit are of the par value of $28,500 and the Studio Building bonds in suit are of the par value of $10,000.

■ Plaintiffs are nephews and nieces of the late Herman Winters and of defendants William Winters and Albertina Dahlke. The contention of plaintiffs is that Herman Winters, before his death, then being the owner of the bonds in suit, created a trust therein by a declaration that he held said bonds as trustee for plaintiffs and one Mabel Thompson.

Appealing defendants claim that no such declaration was made, but, at most, Herman Winters, deceased, merely attempted to make a testamentary gift of said bonds; and that such attempt was ineffectual because it was not made in conformance with the law relating to wills.

As we view the record, the conflict in testimony is presented by appealing defendants. We have before us the record they made in the course of the administration of the estate of their departed brother, Herman Winters, which, in several respects, is inconsistent with the testimony given by them in the trial of the instant case.

On December 2, 1936, appealing defendants were appointed and qualified as administrator and administratrix of the estate of Herman Winters, deceased. These defendants did not include the bonds in suit in the inventory filed by them in the matter of the estate of Herman Winters, deceased.

On April 28, 1937, a petition for the removal of appealing defendants as administrator and administratrix, respectively, of the estate of Herman Winters, deceased, was filed by plaintiffs herein and on Sep-

tember 9, 1937, said defendants filed an answer in said proceeding.

Defendants employed the late Gus C. Moser as their attorney and stated to him all the facts relating to these bonds before the inventory aforesaid was filed.

In said defendants' answer to the petition for their removal, it is stated:

"That the said Gus C. Moser advised the administrator and administratrix that by virtue of the directions of the said Herman Winters, as hereinbefore alleged, the said bonds held for such other persons, as hereinbefore alleged, should not be included in the inventory of said estate."

The lamentable death of Mr. Moser may have contributed to the delay in filing defendants' answer to said petition for their removal. In their answer, it is also stated:

"That several months prior to his death said Herman Winters delivered to the said Albertina Dahlke $10,000 par value of said Studio Building bonds with instructions that the same be set aside for the following persons in the following amounts:

| | |
|---|---|
| Omar Winters | $ 2,500 |
| Herbert Winters | 2,500 |
| Viola Zabel | 2,500 |
| Mabel Thompson | 2,500." |

With reference to the Vancouver Commerical Hotel bonds, in suit, in said answer in said probate proceedings, said defendants state:

"That the said Herman Winters directed that $7,000 par value of said bonds be set aside for each of the following persons: Herman Winters, Fred Winters, Louis E. Winters. That $5,000 of each of said amounts of $7,000 par value was embraced within the $15,000 par value of said bonds pledged for the loan as hereinbefore alleged. That the said Herman Win-

ters also directed that the remainder of said bonds, to-wit, $7,500, should be held for the following persons in the following amounts:

| | |
|---|---|
| Omar Winters | $ 2,500 |
| Herbert Winters | 2,500 |
| Viola Zabel | 2,500." |

The reference in the above quoted statement to the pledge of $15,000 par value of the Vancouver Commercial Hotel bonds occurs because bonds of $15,000 par value had been pledged to Mr. and Mrs. John H. Ramstead as security upon a note in the sum of $6,000 executed by defendant Herbert Dahlke at the instance of Herman Winters, which sum of $6,000 was used to defray federal taxes, owing by Herman Winters, to secure the payment of which, Vancouver Commercial Hotel bonds of the par value of $32,500 had theretofore been pledged to the government by Herman Winters. The Ramstead note has been paid in full. At the time of the trial of the instant case in the circuit court, defendant, Herbert Dahlke, held in the Vancouver bonds in suit as security for a balance of approximately $1,500 which he had advanced to pay the balance due upon the Ramstead note. No controversy is presented with respect to this transaction. At the time of the trial, it was confidently anticipated by all concerned that the interest soon to become due upon the bonds so held by defendant Herbert Dahlke would be sufficient to repay him in full for the money he had advanced as stated.

We are persuaded that the verified statements made by appealing defendants in the probate court in their said answer correctly reflect the course taken by Herman Winters, deceased; and sustain the contention of plaintiffs that by that course Herman Winters cre-

ated a trust for their benefit and that of Mabel Thompson in the bonds in suit.

We are not unmindful that in the trial of this case appealing defendants testified that Herman Winters qualified his statement as to the disposition he desired to make of the bonds in suit by saying, "If anything happens to me," meaning if he should die.

We think that is an afterthought. Mr. Moser would not have advised the administrator and administratrix to withhold the listing of bonds from the inventory of the estate if he had understood that the deceased restricted their disposition until after his death.

We are unwilling to ascribe such a technical meaning to the word "delivered", as to cause us to think that Mrs. Dahlke did not understand what it meant when she stated in her answer, above quoted, that the Studio bonds in suit were delivered to her when her brother, the late Herman Winters, set them aside for the benefit of plaintiffs. On the trial of the instant case, Mrs. Dahlke was unable to state when the bonds were thus set aside; but it will be noted, in the answer in probate it is said that it occurred several months before Herman Winters died.

Certainly Mr. William Winters' attempt to persuade Omar Winters to take possession of his share of the bonds in suit in those of his brother and sister is not consistent with his present position that those three plaintiffs were not entitled to them.

The same inconsistency is shown by the following letter written by William to Fred Winters:

"Dear Fred:

Received your letter to-day—Enclosed find separate sheets for these Vancouver Hotel bonds. Kindly give Louis and Herwin their numbers, I have been

awfully busy first one thing and then another. We haven't got to the appraising yet hope to get at it next week, With regards to all.

Will.

P. S. The loan of $6000 is against the $15,000 Bonds that belong to you three boys.''

We are fully aware that the assertions and conduct of defendants could not have the effect of creating a trust in Herman Winters' property. We have considered and compared the evidence concerning these defendants' actions and statements pertaining to the property in suit only to determine what Herman Winters said and did in that respect.

■ Appealing defendants urge that, in order to establish a voluntary trust with a third person as trustee, there must be a delivery of the trust property to the trustee, or an assignment passing legal title to the trustee. We are constrained to say that as to the Studio Building bonds the principle of law requiring delivery was in the minds of said defendants for they definitely and unequivocally stated in their answer that there was a delivery of the Studio Building bonds. We do not question their statement of the law in that regard. The question here is whether Herman Winters declared himself to be the trustee of the bonds in suit for the benefit of plaintiffs and Mabel Thompson.

■ We are also in accord with the principle urged by appealing defendants that, in order to create a trust, there must be a manifestation of an intent on the part of the trustor that a trust be created.

■ It is also undeniably true that an attempted testamentary disposition of property is invalid in the absence of compliance with the statute of wills.

■ Moreover, we are not at variance with the doctrine that a trust will be declared only upon clear and convincing evidence.

■ "The act or acts of the settlor manifesting his intention to create a trust are usually either the speaking or writing of words, coupled with acts affecting the title and possession of the res. Some line of conduct bringing to light the desire of the settlor must of course be shown. But the inclusion of speaking or writing in this proof is not absolutely necessary. The relationship of the parties, followed by acts affecting title and possession, may lead a court to imply a trust intent as actually existing and as having been expressed, although no words referring to a trust or trustee have been spoken or reduced to writing." 1 Bogert, Trusts and Trustees, § 45 pp. 196, 197.

■ Taking as true, the statements in appealing defendants' answer to the petition for their removal as administrator and administratrix, it is clear that for several months Herman Winters refrained from exercising any dominion or control over the Studio Building bonds which he had delivered to Mrs. Dahlke.

As to the Vancouver Commercial Hotel bonds, defendant, William Winters, testified that, in answer to a question, Herman Winters said in effect that he did not intend to hypothecate those bonds or attempt to raise money on them. In the language of defendants' said answer in probate, "the said Herman Winters directed that $7,000 par value of said bonds be set aside for each of the following persons: Herwin Winters, Fred Winters, Louis E. Winters" and that "the remainder of said bonds, to-wit: $7500 should be held for the following persons in the following amounts, Omar Winters, $2500, Herbert Winters $2500, Viola Zabel $2500."

As to the relationship of the parties, the deceased was an uncle of the beneficiaries named; the declaration by the deceased, as above shown, and the fact that for several months nothing was done by deceased with reference to the Studio Building bonds at variance or inconsistent with the foregoing disposition thereof, leads us to imply a trust intent as actually existing and as having been expressed.

It is conceded that Herman Winters desired plaintiffs and Mabel Thompson to have the bonds in suit. The course taken by appealing defendants in the probate proceeding is justifiable only upon the ground that a trust was created by the deceased as claimed by plaintiffs.

■ We find a very clear pronouncement of the law applicable to the facts in this case in Restatement of the Law, as follows:

"A trust may be created by (a) a declaration by the owner of property that he holds it as trustee for another person," etc.    *    *    *.

"Comment on Cause (a):

a. Declaration of trust. If the owner of property declares himself trustee of the property, a trust may be created without a transfer of title to the property. Illustration. 1: A, the owner of a bond, declares himself trustee of the bond for designated beneficiaries. A is trustee of the bond for the beneficiaries." Vol. I, Restatement of the Law, Trusts, p. 64, § 17.

The decree of the circuit court is affirmed.

RAND, ROSSMAN and BAILEY, JJ., concur.