Walter VOSS, Executor of the Estate of Willard N. Voss, Deceased, Appellant–Respondent–Cross–Claimant,

v.

Lennie LYND, Administratrix of the Estate of Lennice E. Voss, Deceased, Appellee–Petitioner,

Friendship State Bank and Fifth Third Bank of Southeastern Indiana f/k/a First Bank and Trust of Milan, Appellees–Cross–Defendants.

No. 69A01–9107–CV–208.

Court of Appeals of Indiana, First District.

Jan. 16, 1992.

Franklin W. Arkenberg, Arkenberg & Morris, Versailles, for appellant-respondent-cross-claimant.

Douglas C. Wilson, Greeman, Kellerman & Wilson, Batesville, for Fifth Third Bank and Friendship State Bank.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Walter Voss, the Executor of the Estate of Willard N. Voss, Deceased, (collectively "Willard's estate") appeals the negative judgment on his cross-claim for negligence against two banks. We affirm.

## ISSUE

We restate the issue on appeal as:

Is the court's finding that the banks were not negligent contrary to law?

## FACTS

On December 10, 1985, Lennice Voss was admitted to Milan Health Care Center due to Alzheimer's disease. At that time, five certificates of deposit ("CDs") totalling $55,500 had been issued jointly to Willard and Lennice, who were husband and wife. One CD was issued by Friendship State Bank, No. 9422. The other four CDs were issued by Fifth Third Bank of Southeastern Indiana ("Fifth Third Bank"). One of the CDs from Fifth Third Bank, No. 800008101800, had originally been in Willard's name only. In 1986, Willard went to

the Fifth Third Bank and orally requested Lennice's name be removed from the four CDs. The standard procedure of the bank was to mark through the unwanted name, and this was done to the four CDs. Lennice was never contacted regarding the change. The Friendship CD also reflected that Lennice's name had been crossed out and a notation stating, "Removed July 14, 1986, by order of Willard N. Voss, himself, July 14, 1986". Thereafter, all interest checks for the CDs were issued to Willard individually.

Willard died on November 29, 1989, and Lennice died on January 19, 1990. On May 31, 1991, Lennie Lynd, administratrix of Lennice's estate, filed a complaint asserting ownership of all five CDs on the basis of joint ownership with rights of survivorship. Willard's estate filed a cross-claim against the banks alleging that they negligently failed to transfer the CDs to his individual name. The trial court found that CD No. 800008101800 belonged to Willard's estate because all of the money in the CD had been deposited by Willard. However, the court could not discern where the money funding the other four CDs had originated. Therefore, upon determining that the attempts to remove Lennice's name were invalid, the court held the four CDs belonged to Lennice's estate through rights of survivorship. The court found that the banks were not negligent and entered judgment in favor of the banks on Willard's estate's cross-claim.

## DISCUSSION AND DECISION

■ Willard's estate is appealing a negative judgment which necessitates a showing that the judgment is contrary to law. *Beneficial Mortgage Co. v. Powers* (1990), Ind.App., 550 N.E.2d 793, 795, *trans. denied*. On appeal, we will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. We consider only the evidence most favorable to the judgment and do not reweigh the evidence or judge witness credibility. *Id.*

■ The essential question is whether the banks were negligent in marking out Lennice's name on the CDs without informing Willard to comply with IND.CODE § 32-4-1.5-5. I.C. § 32-4-1.5-5 requires a written order be given to a financial institution to change the form of a joint account. Willard did not make any written order, but requested the deletion orally, which the trial court found to be ineffective. To prove negligence, Willard's estate had the burden of establishing a duty owed from the banks to Willard, the failure of the banks to conform their conduct to the requisite standard of care, and injury to Willard proximately resulting from such failure. *See Rubin v. Johnson* (1990), Ind. App., 550 N.E.2d 324, 328-29, *trans. denied*.

The trial court did not find any evidence of negligence by the banks for failing to carry out Willard's desire to dispose of Lennice's interest in the CDs. The court stated "It is clear from the face of the certificates of the Fifth Third Bank that the bank may act on the order of any of the parties named on the certificate. This was not a 'transfer' such as would require a written notice under those provisions." Record at 70. The court further stated that I.C. §§ 32-4-1.5-5 and 32-4-1.5-9 "absolve the financial institutions from the duty to inquire as to the source of funds or their proposed application and empowers them to pay to 'any one or more' of the parties.... Had [Willard] cashed in the [CDs] and applied the monies to his own use, the bank would not have been responsible, nor should they be here." Record at 70-71; *see Kuehl v. Terre Haute First National Bank* (1982), Ind.App., 436 N.E.2d 1160, 1162 (I.C. § 32-4-1.5-9 precludes bank's liability for making payments).

■ Assuming *arguendo* that the banks breached a duty to inform Willard to place in writing his order to remove Lennice's name from the CDs, Willard's estate fails to prove the element of injury to establish negligence. Even if Willard had

complied with I.C. § 32–4–1.5–5, his attempt to strike Lennice's name from the CDs would have been ineffective. A joint account can be terminated only by mutual agreement of the joint tenants. *Clausen v. Warner* (1948), 118 Ind.App. 340, 344, 78 N.E.2d 551, 552, *trans. denied.* Moreover, one joint tenant of money in a joint bank account cannot divest the other of his joint ownership by withdrawing the money without the other's knowledge and consent. *Id.; see also Rogers v. Rogers* (1982), Ind. App., 437 N.E.2d 92, 96. Neither joint tenant can dispose of the interest of the other in life. *Id.* It follows that the striking of one of the joint tenant's names from the account is ineffectual. *See In re Estate of Macak* (1973), 14 Ill.App.3d 261, 302 N.E.2d 436 (husband's attempt to remove wife's name from joint CD was not effective because a joint tenancy agreement cannot be terminated by a unilateral action of one of the parties, even if each has the authority to draw out all of the money from the account); *Gallagher Estate* (1945), 352 Pa. 476, 43 A.2d 132 (husband had no power to destroy joint savings account by having wife's name stricken where wife was insane and unable to consent to terminate her interest).[1]

Lennice's estate would still have acquired the CDs by right of survivorship. The banks' failure to inform Willard to make his request in writing did not cause the result of the CDs being given to Lennice's estate. This result would have occurred even if Willard had been advised and complied with I.C. § 32–4–1.5–5. *See Paskas v. Illini Federal Savings & Loan Association* (1982), 109 Ill.App.3d 24, 64 Ill.Dec. 642, 440 N.E.2d 194 (bank not liable for paying funds from joint account to one of the joint tenants). Willard's estate fails

to show injury resulting from the banks' failure to advise him properly.

Affirmed.

ROBERTSON, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Justice, concurring.

I can concur because Willard's request to the bank that Lennice's name be deleted from the C.D.s was not in writing. I am not convinced, however, that a written notice by one party to a joint account, pursuant to I.C. 32–4–1.5–5, cannot change the form of the account so as to alter or divest the interest of another party to the account unless that other party has agreed.

Statutes which exempt banks from liability for paying funds to a survivor of a joint account do not control the question of ownership of the funds. *Jones v. Jones* (1982) Ala., 423 So.2d 205. While I.C. 32–4–1.5–8 through I.C. 32–4–1.5–12 are such provisions with respect to payments made by banks, I.C. 32–4–1.5–5 is not.

In *Call v. Bank of Gallatin* (1985) Mo. App., 695 S.W.2d 138, *trans. denied,* the court held that a written change by one joint tenant without the consent of the other joint tenant, was effective to divest the other party of his joint interest. To the same effect is *Hanover Bank of Pennsylvania v. United Penn Bank* (1984) 326 Pa.Super. 593, 474 A.2d 1137. A seemingly contrary result was reached in *Benfield v. First Federal Savings and Loan Ass'n of Cawtawba County* (1979) 44 N.C.App. 371, 261 S.E.2d 150. There, the court held that a joint account could be changed only by signature of all parties or by one party

---

1. Some states have adopted the opposite position that the right of a joint depositor to withdraw all the funds from a joint account encompasses the right to delete the name of another on a joint account. *See McEntire v. Estate of McEntire* (1979), 267 Ark. 169, 590 S.W.2d 241; *Kacirek v. Mangan* (Colo.Ct.App.1971), 489 P.2d 342; *Bealert v. Mitchell* (Ky.Ct.App.1979), 585 S.W.2d 417; *Wright v. Commercial and Savings Bank* (1982), 51 Md.App. 398, 445 A.2d 30; *Hoffman v. Vetter* (1962), 117 Ohio App. 233, 24 Op.2d 1, 192 N.E.2d 249. Even if this position were followed in Indiana, the result of this case would be the same because banks are not liable in Indiana if one depositor withdraws all of the funds from a joint account. *See* I.C. § 32–4–1.5–9.

withdrawing all funds and opening a new account. The result only seems contrary, however, because North Carolina does not have any statutory provision analogous to our I.C. 32–4–1.5–5, which tracks precisely Section 6–105 of the Uniform Probate Code.

Missouri is the only jurisdiction disclosed by my research to have a statutory scheme somewhat similar to Indiana's combination of bank payment protection legislation and the provisions set forth in I.C. 32–4–1.5–5. *See* Mo.Ann.Stat. section 362.470 (Vernon Supp.1991).

Two Missouri cases are instructive. In *McGee v. St. Francois County Savings and Loan Ass'n* (1977) Mo., 559 S.W.2d 184, at the request of the joint tenant who had created the account and who was the only depositor, the name of the other joint tenant was lined through by the S & L officer. Although the court held that such procedure was not as desirable as cancelling the old deposit certificates and issuing new ones, it was effective to terminate the joint account and destroy the right of survivorship in the other party. In *Home Savings Ass'n of Kansas City v. Bratton* (1986) Mo.App., 721 S.W.2d 40, one joint tenant, prior to his death, orally instructed the S & L not to pay out the proceeds to the other joint tenant, but was told that the certificates themselves would have to be surrendered. The other joint tenant, who had possession of the certificates, then attempted to cash them but the S & L refused in light of the earlier oral request. Later, the S & L received what was purported to be a written instruction from the original joint tenant's son pursuant to an alleged power of attorney. The court held that because the son did not have a power of attorney, the attempted written instruction to the S & L was ineffective and that the mere intent to unilaterally terminate a joint account is not sufficient. The holding necessarily implied that had the son held the authority from his father, the written instruction to the S & L would have divested the other joint tenant's interest in the account.

It may well be contended that I.C. 32–4–1.5–5 was intended as a protection to the financial institution in the event that all funds were paid out to one of the parties to a formerly joint account. The fact remains, however, that the statute is not so limited. It specifically states that the *form* of the account is altered. It further states that the rights of survivorship in such an account are determined by the *form* of the account at the death of a party. By specifically permitting *one* party to a joint account, whether or not that person created the account and has been the sole contributor to the account, to alter the form of the account, the statute necessarily results, in such instance, in a divestment of the survivorship interest held by the other joint tenant.

In my estimation, I.C. 32–4–1.5–5, passed in 1976, rendered obsolete the 1948 holding in *Clausen v. Warner* (1948) 118 Ind.App. 340, 78 N.E.2d 551, or at least diluted it substantially. The question is one deserving of the attention of our Supreme Court even though the matter does not impact the result of this case.